IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JONATHAN ROBY,** | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 6832 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| **LIBERTY MUTUAL PERSONAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jonathan Roby bought automobile insurance from Liberty Mutual Personal Insurance Company ("Liberty Mutual") covering the period from August 2019 to August 2020. Midway into his insurance term, the COVID-19 pandemic forced many state and local government officials to order most Americans to stay home unless absolutely necessary. As a result, far fewer people drove during those months, and there were fewer accidents and insurance claims.

Roby alleges, on behalf of himself and a putative class, that Liberty Mutual received a windfall from this reduced activity, and that its failure to lower its insurance premiums to reflect this breached its insurance contracts violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, and constituted unjust enrichment. Roby originally brought this putative class action in Illinois state court, and Liberty Mutual removed the case to this Court and moved to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6). For the following reasons, Liberty Mutual's motion is granted.

## I. Background[1]

Illinois resident Jonathan Roby purchased auto insurance from Liberty Mutual for the period covering August 22, 2019 to August 22, 2020. 1st Am. Class Action Compl. ("Am. Compl.") ¶ 29, ECF No. 31. At the time he did so, no one foresaw the seismic disruption COVID-19 would cause to our society over the next year. The pandemic's arrival in March 2020 forced states to issue lockdown orders that closed businesses and restricted nonessential travel outside the home. *Id.* ¶¶ 12–15. As a result, Americans drove an average of 62.5 percent fewer miles per week in the period between March 15 to April 25, 2020, when compared to January of that same year. *Id.* ¶¶ 19–20. The number of reported car accidents and insurance claims dropped significantly as well. *Id.*

Liberty Mutual recognized these dramatic nationwide changes and offered a 15 percent refund on insurance premiums for March and April 2020. Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 2, ECF No. 35. Roby received this refund, but believes it was not enough to compensate him for the "unconscionably excessive" premiums he has paid since March 2020. Am. Compl. ¶ 21. According to Roby, Liberty Mutual's premiums no longer reflect "an accurate assessment of risk since the pandemic began," *id.* ¶ 23, and he argues that the insurance company's failure to

---

[1] The following well-pleaded factual allegations are accepted as true for purposes of the motion to dismiss.

adjust premiums to reflect the reduced level of risk post-pandemic violates Illinois law and public policy. *Id.* ¶¶ 5, 23.

Roby's Liberty Mutual policy contains the following language:[2]

> CHANGES
>
> . . .
>
> B. The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information.
>
> Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:
>
> 1. The number, type or use classification of insured vehicles.
>
> 2. Operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses.
>
> 3. The location where your vehicle is principally garaged.
>
> 4. Customized equipment or parts.
>
> 5. The persons who regularly operate a covered auto.

Def.'s Mem., Ex. B, LibertyGuard Auto Policy ("Policy") at 31, 45, ECF No. 35-2. As Roby sees it, the language providing that "[i]f this information is incorrect,

---

[2] Roby's Amended Complaint quotes different (but substantially equivalent) language for subsections A and B, which Liberty Mutual notes has since been replaced by an endorsement. *See* Def's Mem. at 6–7. The parties appear to agree that the new language governs, so the Court quotes the "Changes" section as amended by the endorsement. In any event, the Court can consider the insurance contract provided by Liberty Mutual, because it is central to Roby's allegations. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

incomplete, or changes, we will adjust your premium based on the corrected, completed or changed information" gives Liberty Mutual the discretion to lower premiums based on changes to its general risk profile. *Id.* at 45. And the reduction in driving rates during the pandemic constitutes "information from . . . other sources" that Liberty Mutual admits it considers when creating and changing its premiums. *Id.*; *see* Pl.'s Resp. Opp. Def.'s Mem. ("Pl.'s Resp.") at 11, ECF No. 39. Thus, Roby argues, Liberty Mutual was dutybound to exercise its discretion and lower his premiums, and its failure to do so violates Illinois contract and consumer protection law.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

When considering a motion to dismiss, the Court must accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time,

4

it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

### III. Analysis

#### A. Breach of Contract Claim

Roby rests his breach of contract claim on the duty of good faith and fair dealing, which is implied in every contract under Illinois law.[3] *JPMorgan Chase Bank, N.A. v. E.-W. Logistics, Inc.*, 9 N.E.3d 104, 118 (Ill. App. Ct. 2014) (citation omitted). The duty of good faith and fair dealing requires a party with contractual discretion to exercise it reasonably and not "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties." *Id.* (quoting *Bank One, Springfield v. Roscetti*, 723 N.E.2d 755, 764 (Ill. App. Ct. 1999)). Therefore, in order to state a breach of contract claim based upon an alleged violation of a contracting party's duty of good faith and fair dealing, Roby must plausibly allege (1) that, under the terms of the insurance contract, Liberty Mutual had the discretion to modify premium rates based upon changes in general driving habits, and (2) that Liberty Mutual exercised this discretion "arbitrarily, capriciously, or in a manner inconsistent with the [parties'] reasonable expectation." *JPMorgan Chase*, 9 N.E.3d at 118; *see also Burger v. Spark Energy Gas, L.L.C.*, 507 F. Supp. 3d 982, 990 (N.D.

---

[3] Plaintiff invokes Illinois law, and Defendant does not state otherwise. Accordingly, the Court too will assume that Illinois law governs the breach of contract claim.

5

Ill. 2020) (stating that a violation of the implied covenant of good faith and fair dealing may "give rise" to a breach of contract).[4] The complaint does neither.

As to the first element, Roby must point to express terms in the contract that provide Liberty Mutual with the discretion upon which his claim is premised. *See Mid-W. Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. Ct. 2004) (requiring "a satisfactory basis . . . in the express contract of the parties" in order to find a breach of the covenant of good faith and fair dealing). In an effort to do so, Roby argues that the language in the "Changes" section of the policy stating that Liberty Mutual "will adjust your premium based on . . . corrected, completed or changed information" shows that Liberty Mutual had the discretion to lower his premiums based on the lower volume of overall drivers after the commencement of the COVID pandemic. Policy at 31, 45. In response, Liberty Mutual contends that "the provision only contemplates premium changes based on *individualized* information that is provided by Plaintiff." Def's Mem. at 8 (emphasis in original). Both parties invoke *Siegal v. GEICO Casualty Corp.*, 523 F. Supp. 3d 1032 (N.D. Ill. 2021), so that is where the Court will start.

The gravamen of the claims in *Siegal* is similar to that of Roby's claims. The *Siegal* plaintiff alleged, among other things, that her automobile insurance carrier, GEICO Indemnity Company, breached the insurance contract by violating the duty

---

[4] By contrast, Illinois law does not recognize an independent tort claim based upon an alleged breach of the duty of good faith and fair dealing. *See Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762 (N.D. Ill. 2021); *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1130–31 (Ill. 2001).

6

of good faith and fair dealing and violated the ICFA, by not fully refunding the savings it obtained as a result of the lower volume of drivers after the commencement of the COVID-19 pandemic. After construing the language in question and the policy as a whole, the district court in *Siegal* held that the contract did not provide GEICO with contractual discretion to reduce the plaintiff's premiums, because the provision referred to information that was specific to the insured and not to driving habits nationwide. *See id.* at 1039.

This Court finds this reasoning persuasive. Here, too, when read in context, *see Matthews v. Chi. Transit Auth.*, 51 N.E.3d 753, 776 (Ill. 2016), the Court concludes that the "information . . . from other sources" provision in the Liberty Mutual contract refers only to changes in individual circumstances, not driving habits generally. Indeed, the same provision provides examples of the types of information that might lead to a rate change, including the number of insured vehicles and the identity of the persons who regularly drive the vehicles—all of which pertain to the individual policyholder. *See* Policy at 45. Thus, under the principle of *ejusdem generis* that "general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," *Yates v. United States*, 574 U.S. 528, 545 (2015) (citations omitted), the Court holds that only insured-specific information would permit Liberty Mutual the ability to change premiums, not changes in general driving trends.

Roby's arguments to the contrary are unconvincing. First, he argues that the fact that Liberty Mutual provided policyholders a 15 percent premium refund for two

7

months' worth of premiums shows that it had discretion to change the policy premium in response to the pandemic's impact on driving. But the complaint is devoid of any plausible allegations that Liberty Mutual issued the refunds because it believed it had a contractual obligation to do so, rather than for marketing or competitive purposes.

Second, Roby argues that the policy enabled Liberty Mutual to "unilaterally amend the terms of the agreement *for any reason*." Pl.'s Resp. at 12 n.7. But this is not correct. While it is true that Liberty Mutual could amend *the language of the Policy* through an endorsement, nothing in the policy suggests it could use a generally applicable endorsement to amend the amount of the premium itself.[5]

Finally, Roby appeals to the Illinois rule providing that ambiguous terms in insurance policies are construed against the insurer. *See Rich v. Principle Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007). But, for the reasons articulated, the Court finds that the "Changes" provision is not "reasonably susceptible to more than one meaning." *Neth. Ins. Co. v. Macomb Cmty. Unit Sch. Dist. No. 185*, 8 F.4th 505, 507 (7th Cir. 2021) (quoting *Rich*, 875 N.E.2d at 1090). Accordingly, it is not ambiguous as a matter of law, and the rule of construction that Roby cites does not apply. *See id.* ("[C]reative possibilities suggested by the parties fall short of genuine ambiguity." (quotation marks omitted) (quoting *Hess v. Estate of Klamm*, 161 N.E.3d 183, 188 (Ill. 2020)).

---

[5] It is worth noting that the GEICO policy at issue in *Siegal* also allowed the insurer to unilaterally change its terms through an endorsement. *See* 532 F. Supp. 3d at 539 (quoting the GEICO policy).

8

Because Roby has not pointed to express terms in the policy establishing that Liberty Mutual possessed the contractual discretion to lower premium rates based upon changes in overall driving habits, the Court grants Liberty Mutual's motion to dismiss the breach of contract claim.

**B.     ICFA Claim**

Turning to Roby's statutory claim, ICFA is "a regulatory and remedial statute intended to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quotation marks omitted) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). There are two theories of liability under ICFA: deceptive practices and unfair conduct. *See id.*

Here, Roby asserts an unfair conduct claim. To state such a claim, he must show that Liberty Mutual's failure to lower his premium when driving rates declined was "unfair" in light of three factors: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961. A challenged business practice need not satisfy all three factors; rather it can be unfair if it violates one of the factors to a substantial degree or violates all of the factors to a lesser degree. *See id.* Moreover, because Roby is a private plaintiff, he must demonstrate an "actual pecuniary loss" caused by the practice. *Kim v. Carter's, Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)).

1.     **Illinois Public Policy**

The scope of "public policy" for purposes of an ICFA unfair conduct claim is "established by statutes and the common law." *Batson v. Live Nation Ent.*, 746 F.3d 827, 833 (7th Cir. 2014); *see, e.g.*, *City of Chi. v. Purdue Pharma L.P.*, No. 14 CV 4361, 2021 WL 1208971, at *8 (N.D. Ill. Mar. 31, 2021) (pharmaceutical companies' opioid distribution practices offended public policy because they allegedly violated the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*). In support, Roby offers two potential theories.

First, Roby contends that Liberty Mutual's "unconscionably excessive" premiums violate Illinois's public policy that insurance premiums "are to be based on an accurate assessment of risk." Pl.'s Resp. at 6. In making this argument, Roby cites to *Allstate Insurance Co. v. Keller*, 149 N.E.2d 482 (Ill. 1958) and *American Deposit Corp. v. Schacht*, 84 F.3d 834 (7th Cir. 1996), but neither gives rise to the public policy on which Roby relies. In *Allstate*, the court does state that insurance is "cloaked with the public interest," 149 N.E.2d at 484, but this language is prefatory *dicta* in a case about an insurer's refusal to defend an insured. *See id.* In the passage Roby cites in *American Deposit Corp.*, the court simply defines "insurance" using a quote from a 1943 Congressional hearing. *See* 84 F.3d at 840 (quoting H.R. Rep. No. 873, 78th Cong., 1st Sess., 8–9 (1943)). Neither case establishes a public policy that an insurer must *sua sponte* lower premium rates when confronted with changing world conditions.

Roby also relies on *Siegal*, where the district court found that the plaintiff had sufficiently alleged that GEICO's premium rates violated public policy. *See* 523 F.

10

Supp. 3d at 1044 (accepting without further inquiry plaintiff's argument that Illinois public policy prohibits unconscionable insurance premiums). But, in that case, the complaint alleged that GEICO had affirmatively claimed that the refund program "provided full relief." *Id.* No allegations of such affirmative representations are present here. And, while Roby suggests that the *Siegal* court did not consider this allegation to be material to its analysis, its reliance upon *Benson* indicates otherwise. *See id.* (citing *Benson*, 944 F.3d at 647).[6]

Another case in this district, *Ridings v. American Family Insurance Co.*, No. 20 CV 5715, 2021 WL 722856, at *6 (N.D. Ill. Feb. 24, 2021), is more instructive. That case too involved an auto insurance policyholder, who alleged that her insurance carrier provided inadequate relief to its Illinois policyholders after May 2020. And the district court dismissed the ICFA unfairness claim, holding that the insurer's actions did not violate public policy because "the Illinois legislature has determined that open competition in auto insurance rates is workable and beneficial . . . [and] insurers . . . are free to establish rates in response to their independent assessments of economic and market conditions." *Id.* (first alteration omitted) (quoting *Corbin v. Allstate Corp.*, 140 N.E.3d 810, 815 (Ill. App. Ct. 2019)). The Court finds the reasoning in *Ridings* persuasive.

Roby's second public policy argument relies on statements from the Governor and Attorney General of Illinois at the start of the pandemic that purportedly

---

[6] Recall that *Benson* involved allegations that a chocolate candy manufacturer deceived the public by leaving too much slack space in its opaque candy boxes. *See* 944 F.3d at 646.

advanced a public policy that Illinoisians should not "exploit[] the pandemic for financial gain." Pl.'s Resp. at 6. But neither the Governor's nor the Attorney General's words are sufficient to support a public policy prohibiting all businesses from benefitting financially from circumstances created by the pandemic. For example, companies that manufacture masks likely benefited from COVID-19, but no one reasonably could suggest that they violated public policy by doing so. At most, the Attorney General's press release contains a condemnation of exploitative pricing of "items that are crucial to stopping the spread . . . such as hand sanitizer, disinfecting wipes, face masks and disinfectant sprays." Press Release, *Attorney General Rauol Will Take Action to Stop Price Gouging on Items Related to the Coronavirus*, ILL. ATT'Y GEN. (March 17, 2020), https://illinoisattorneygeneral.gov/pressroom/2020_03/20200317b.html.

Given the above, the Court concludes that Roby has not sufficiently pleaded that Liberty Mutual violated an Illinois public policy by maintaining its premium rates after the onset of the COVID-19 pandemic.[7]

---

[7] In his Notice of Supplemental Authority, Roby points to a recent case from the Northern District of California that found that the plaintiff had plausibly alleged that State Farm's premium prices during the pandemic constituted unfair conduct under California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.*, because they violated California's public policy against "rates in excess of a fair rate of return on the insured risk." *Boobuli's LLC v. State Farm Fire and Cas. Co.*, No. 20-cv-07074-WHO, slip op. at 19 (N.D. Cal. Oct. 5, 2021). But the plaintiff in that case had pointed to "statutes and regulations" supporting the existence of such a public policy under California law, *id.*, something Roby has not done here.

### 2. Immoral, unethical, oppressive, or unscrupulous conduct

Turning to the second factor in the unfairness analysis, a business practice is immoral, unethical, oppressive, or unscrupulous under ICFA if it "[leaves] the consumer with little choice but to submit to it." *Newman v. Met. Life Ins. Co.*, 885 F.3d 992, 1002–03 (7th Cir. 2018); *see also Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (holding that because plaintiff "was in no way forced to buy" the insurance policy at issue, "there was a total absence of the type of oppressiveness and lack of meaningful choice necessary" for immoral or unethical conduct under ICFA (quoting *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 610 (7th Cir. 2013))).

Here, it is undisputed that Roby was free to cancel his insurance policy with Liberty Mutual and transfer to another company if he believed that the rates were too high. *See* Policy at 19. Therefore, Roby has failed to sufficiently allege that Liberty Mutual's conduct was "immoral" as ICFA defines the term. *See Cohen*, 735 F.3d at 610 ("There was a total absence of oppressiveness because all along [plaintiff] could have gone elsewhere to buy cheaper insurance." (quoting *Robinson*, 775 N.E.2d at 962)); *Ridings*, 2021 WL 722856, at *6 (holding that American Family's premium pricing was not immoral under ICFA because plaintiff could freely cancel her policy).

### 3. Actual damages

The third and final factor in the unfairness analysis is whether the challenged practice caused "substantial injury" to consumers. And, because Roby brings this claim as a private consumer, to satisfy this element, he must show that Liberty Mutual's conduct caused him actual pecuniary loss. *Benson*, 944 F.3d at 647.

13

As to this factor, Roby alleges that Liberty Mutual's auto insurance rates were excessively high, causing him actual damages. But high insurance premium rates are generally insufficient to satisfy the injury requirement under ICFA. *See Toulon*, 877 F.3d at 741 (holding that a 76.5% increase in an insurance premium was not sufficient to allege substantial injury); *G.O.A.T. Climb and Cryo, LLC v. Twin City Fire Ins. Co.*, __ F. Supp. 3d __, 2021 WL 2853370, at *8–9 (N.D. Ill. July 8, 2021) (finding no damages where plaintiff "agreed to pay a certain premium" that later "turned out to be a bad deal when its income fell during the pandemic," because "[a]n insurance contract cannot be called unfair under the ICFA simply because the purchase proved in hindsight to be a losing bet," *id.* at *9).

Roby paid Liberty Mutual for a policy insuring his vehicle for a year, and that is what he received. If Roby was dissatisfied with his premium once the pandemic commenced, he "could have gone elsewhere" to buy insurance. *G.O.A.T.*, 2021 WL 2853370, at *8 (quoting *Cohen*, 735 F.3d at 610). Just as Liberty Mutual cannot unilaterally increase the premium that Roby has to pay mid-term based upon circumstances external to him, "[g]eneral principles of insurance law" do not allow Roby to re-roll on his "losing bet." *Id.* at *9; *see id* at *8 ("[A]n insured may not have any part of his or her premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned." (quoting 5 COUCH ON INSURANCE § 79:7)); *see also Ridings*, 2021 WL 722856, at *6.

14

Because Roby has not shown that Liberty Mutual's alleged conduct implicates any of the three factors weighed in evaluating ICFA unfair conduct claims, his claim under ICFA is dismissed.

## C. Unjust Enrichment Claim

Unjust enrichment is an equitable remedy that is based on an implied contract. *Touloun*, 877 F.3d at 742. Accordingly, Illinois law "refuse[s] to recognize unjust enrichment claims where contracts already establish rights and remedies." *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 819 (7th Cir. 2018). Attempting to circumvent this obstacle, Roby pleads the unjust enrichment claim in the alternative to his breach of contract claim and "in connection with his ICFA claim." Pl.'s Resp. at 15.

Roby is correct that a plaintiff may plead unjust enrichment as an alternative to a breach of contract claim when it is unclear whether an express contract exists. But there is no question that Roby and Liberty Mutual entered into an express contract. As a consequence, Illinois law does not allow Roby to plead an unjust enrichment claim, even in the alternative. *See Toulon*, 877 F.3d at 742 (holding that pleading unjust enrichment was not permitted when "[t]here is no question that a contract for insurance governs the relationship" between the parties); *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 659 (7th Cir. 2014) ("Since [the plaintiff] never challenged the contract's validity, the appropriate remedy was a breach of contract claim; unjust enrichment has no application.").

Furthermore, under Illinois law, a plaintiff cannot state a viable unjust enrichment claim where the alleged unjust enrichment falls *within the subject matter*

15

of an express contract. *See, e.g.*, *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) ("In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim." *Id.* at 689); *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992). Here, Roby's unjust enrichment claim relates to the premium Liberty Mutual charged for its policy, which is unquestionably within the "subject matter" of his insurance contract. *See Toulon*, 877 F.3d at 742; *Siegal*, 523 F. Supp. 3d at 1045 (noting that plaintiff's "excessive payments only make sense in relation to her express insurance contract"); *Ridings*, 2021 WL 722856, at *7.

For these reasons, Roby cannot bring an unjust enrichment claim based on the insurance premiums he paid, and the Court dismisses that claim as well.

## Conclusion

For the reasons stated above, Defendant's motion to dismiss is granted in full. Because Roby already has tried to amend his complaint once, the Court will afford him one final opportunity to do so, if he believes that he can plead facts in good faith to address the deficiencies in his ICFA claim. Therefore, the dismissal is with prejudice as to the breach of contract and unjust enrichment claims, but without prejudice as to the ICFA claim. Any amended complaint must be filed by February 25, 2022. A status hearing is set for March 23, 2022, at 9:00 a.m.

**IT IS SO ORDERED.**                    **ENTERED   1/24/22**

*[signature: John Z. Lee]*

                                              **John Z. Lee**
                                              **United States District Judge**